UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 07-61281-CIV-HUCK

ROBERT L. HENRY,

    Petitioner,

vs.

JAMES MCDONOUGH, Secretary, Florida
Dept. of Corrections, BILL MCCOLLUM,
Attorney General,

    Respondents.
_____/

**ORDER DENYING PETITIONER'S MOTION TO HOLD IN ABEYANCE**

THIS MATTER is before the Court upon Petitioner Robert L. Henry's Amended Omnibus Motion to Hold in Abeyance (D.E. # 75), filed February 4, 2009, *pro se* Supplemental Motion to Hold In Abeyance (D.E. # 87), filed March 9, 2009, and Motion to Stay (D.E. # 88), filed March 10, 2009. In 1988, in the Circuit Court of Broward County, Florida, Henry was convicted of two counts of first-degree murder for the deaths of Janet Thermidor and Phyllis Harris. Henry was sentenced to death for both murders. Henry was also convicted and sentenced to life imprisonment for armed robbery and arson.

On September 10, 2007, Henry filed a petition for writ of habeas corpus with this Court. The operative petition was filed February 24, 2009 (D.E. # 81). Henry seeks a stay and abeyance of this petition so he can return to state court to conduct DNA testing on crime scene evidence and pursue an ineffective assistance of counsel claim against his trial counsel, as well as a conspiracy claim against his post-conviction counsel and the Florida Attorney General's office.[1]

---

[1] Henry's *pro se* conspiracy claim is not adopted by Henry's appointed counsel. (3/10/09 Mot. to Stay.) Additionally, the conspiracy claim is not articulated as a basis for habeas relief in Henry's operative petition. (2/24/09 Am. Pet. For Writ of Habeas Corpus.) It appears this conspiracy claim first materialized in 2007 after

Henry contends he was unable to exhaust these claims earlier "because of the unique circumstances [he] faced in State Court." (Pet'r's Omnibus Mot. to Hold in Abeyance at 2.) For the reasons set forth below, the motion is denied.

**I. Standard of Review**

Generally, district courts should dismiss habeas petitions containing unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982) ("We hold that a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."); *Jiminez v. Fla. Dep't of Corrs.*, 481 F.3d 1337, 1342 (11th Cir. 2007) ("If a petitioner has not exhausted all claims in a petition, a federal court must dismiss without prejudice both exhausted and unexhausted claims to allow petitioners to return to state court to exhaust state remedies for all claims.")

In limited circumstances, district courts have discretion to stay habeas petitions containing both unexhausted and exhausted claims. *Rhines v. Weber*, 544 U.S. 269, 271-72 (2005) (federal district courts have "discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition.") However, "[b]ecause granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. Accordingly, a "district court should stay, rather than dismiss, [a] mixed petition" if "the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. Indeed, as the Supreme

---

Henry failed to appeal the trial court's order denying his motion for DNA testing. (*See* Resp't's Objections to Pet'r's Third Mot. to Hold in Abeyance, n.1.)

Court observed, it "likely would be an abuse of discretion for a district court to deny a stay" if a petitioner satisfied these requirements. *Id.*

However, "if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.* A petitioner's right to obtain federal relief is unreasonably impaired if dismissal results in "termination of any federal review." *Id.* at 275. The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on federal habeas petitions. 28 U.S.C. 2244(d)(1). "Although [AEDPA's] limitations period is tolled during the pendency of a 'properly filed application for State post-conviction or other collateral review' . . . the filing of a petition for habeas corpus in federal court does not toll the statute of limitations." *Rhines*, 544 U.S. at 274-75. Dismissing a habeas petition so a petitioner can return to state court "will likely mean the termination of any federal review" because it is unlikely a petitioner can exhaust his state claims and return to federal court before AEDPA's one-year statute of limitations runs. *Id.* at 275. Thus, a petitioner that is denied a stay and abeyance must make a decision: dismiss the unexhausted claims and proceed on the exhausted claims only or dismiss the entire petition and refile after exhausting the unexhausted claims. However, the latter choice "could result in the loss of all [of a petitioner's] claims—including those already exhausted—because the limitations period could expire during the time a petitioner returns to state court to exhaust his unexhausted claims." *Pliler v. Ford*, 542 U.S. 225, 230 (2004).

**II. Discussion**

Henry's habeas petition challenges his conviction and death penalty sentence on six grounds: (1) erroneous admission under *Miranda* of statements made by Henry; (2) ineffective assistance of trial counsel; (3) erroneous admission of alleged hearsay statements by one of the victims; (4) failure to allow DNA testing to prove voluntary intoxication; (5) ineffective assistance of appellate counsel; and (6) a proportionally excessive sentence. Respondent contends and Henry acknowledges that the DNA testing claim and ineffective assistance of trial counsel claim in his habeas petition are not fully exhausted. Accordingly, Henry seeks a stay of his habeas petition so he can pursue a conspiracy claim in state court. Henry's habeas petition, which contains "both exhausted and unexhausted claims," is a "mixed petition" which this Court "may not adjudicate." *Rhines*, 544 U.S. at 273. However, as indicated above, the Court has discretion to stay Henry's petition if he can establish (1) "good cause for his failure to exhaust," (2) that "his unexhausted claims are potentially meritorious," and (3) no "intentionally dilatory litigation tactics." *Id.* at 278.

    **A. DNA Claim**

Henry wants to return to state court to conduct DNA testing on a beer can police discovered twelve days after the murders. The beer can—allegedly used to smoke crack—was located behind a toilet in the men's bathroom where one of the victims was found. Henry contends DNA from the beer can may show that he was intoxicated at the time of the murders, potentially mitigating his death sentence because voluntary intoxication was a defense when he was convicted.

Henry's DNA claim does not satisfy the three requirements of *Rhines*. Therefore he is not entitled to a stay to exhaust this claim. First, Henry cannot establish good cause for failing to

exhaust his DNA claim in state court before filing his federal habeas petition. In 2001, Henry asked the state trial court hearing his post-conviction petition to "suspend any DNA testing" and allow Henry "access to DNA testing of evidence after October 1, 2001, when Section 925.11, Fla. Stat. comes into effect . . . ."[2] (5/25/01 Mot. to Preclude Destruction of Evidence.) Henry filed his motion in response to the state's announcement that it planned to perform DNA testing in all Broward County cases where a defendant had been sentenced to death. (*Id.*) In his motion, Henry expressed concern that the state would engage in destructive testing before he could "take advantage in October 2001 of the new statutory right that has been created by the legislature." (*Id.*) In an attempt to address Henry's concerns, the state offered to conduct all DNA testing in compliance with Florida Statute § 925.11 immediately. (6/25/01 Resp. to Def.'s Mot. to Preclude Destruction of Evidence.) The state also volunteered to "test any items of evidence that are amenable to DNA testing that the Defense would like tested." (*Id.*) Nevertheless, in a hearing on June 28, 2001, Henry proceeded with his motion to "suspend any DNA testing," which the state trial court granted. (6/28/01 Order (ordering "no DNA testing . . . by the Broward County Sherriff's Laboratory prior to October 1, 2001" and that "after October 1, 2001, the Defendant shall follow the dictates of 925.11 and 943.3251 Florida Statutes for the testing of DNA.").) Over two years later, on January 22, 2003, the trial court denied Henry's post-conviction petition. During the pendency of his post-conviction petition, which extended from October 1998 to January 2003, Henry did not seek DNA testing of the beer can, although he was aware of its existence and the availability of DNA testing. In fact, during this same period, Henry sought forensic testing of blood and clothing evidence. (7/23/01 Def.'s Renewed Mot. for Blood and Clothing Analysis and Request for Hearing.) But Henry waited until September 30,

---

[2] Section 925.11 establishes procedures for a convicted defendant to obtain postsentencing DNA testing of biological evidence. *See* Fla. Stat. § 925.11 Postsentencing DNA Testing.

5

2003—two years after he could "take advantage . . . of the new statutory right . . . created by the legislature"—to pursue DNA testing of the beer can. (9/30/03 Def.'s Mot. for DNA Testing.) Critically, Henry has not provided any legitimate reason for the two-year delay. The only explanation offered by Henry is that the "deliberate acts of misconduct" by prior counsel and the assistant attorney general prevented him from pursuing DNA testing sooner. (2/4/09 Pet'r's Am. Omnibus Mot. to Hold in Abeyance.) Yet, those allegations of misconduct involve an alleged conspiracy between trial counsel and the attorney general in 2007. (2/10/09 Aff. in Supp. of Def.'s Mot. for Appt. of Counsel.) Thus, even if true, those allegations would not excuse Henry's deliberate decision to forego DNA testing back in 2001. Henry also suggests a stay is appropriate because, under Florida law, he can still seek DNA testing. However, the availability of DNA testing under Florida law does not excuse Henry's failure to pursue testing sooner, particularly when, as here, Henry was specifically offered the opportunity to conduct DNA testing and failed to pursue that opportunity in 2001. Henry's calculated decision to delay—indeed, stall—DNA testing is not good cause. And because Henry cannot show good cause for his failure to pursue DNA testing, a stay and abeyance is inappropriate.

Second, even if Henry had good cause for the delay, he cannot establish that his DNA claim is a "potentially meritorious" constitutional claim. *Rhines*, 544 U.S. at 278. Henry fails to explain how the DNA testing he seeks—even if it ultimately established he was intoxicated and entitled to mitigating jury instructions—would entitle him to federal habeas relief. Federal habeas relief is only available "on the ground that [Petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). At best, Henry contends the DNA test "may reveal valuable and enlightening exculpatory evidence with respect to this case." (2/4/09 Pet'r's Am. Omnibus Mot. to Hold in Abeyance.) The DNA evidence

6

Henry seeks would not establish that Henry "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The purpose of the exhaustion requirement, which the stay and abeyance procedure promotes, is to allow states "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights" in the interest of comity. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). But permitting Henry to return to state court to pursue DNA testing will not enable the state court to remedy an alleged violation of Henry's federal rights, because Henry's DNA claim does not allege that his federal rights have been violated. Thus, Henry's DNA claim is not potentially meritorious. Therefore, a stay and abeyance would be pointless and inappropriate.

Finally, it is apparent this claim was not exhausted earlier due to Henry's dilatory behavior. "[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Rhines*, 544 U.S. at 270. Henry could have pursued DNA testing of the beer can at least as early as 2001, but instead, purposefully thwarted all DNA testing. Henry then waited an additional two years to pursue DNA testing of the beer can. Henry has not established that this dilatory behavior was not intentional. *Id.* Accordingly, Henry has failed to satisfy the requirements of *Rhines* for a stay based on his DNA claim.

### B. Ineffective Assistance of Counsel Claim

Henry also requests a stay so he can return to state court to exhaust his claim that he received deficient legal representation at trial. Specifically, Henry contends his attorney erred by failing to attack a search warrant on the basis that the supporting affidavit contained misleading information constituting a "deliberate falsehood" or a "reckless disregard for the truth" in violation of *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The search warrant allowed police

to obtain hair, blood, fingernail scrapings, clothing fibers and other physical evidence from Henry. (R. on Appeal at 319-23, 1820.)

Henry cannot establish that he is entitled to stay his habeas petition to exhaust his ineffective assistance of counsel claim. First, Henry does not satisfy the good cause requirement of *Rhines*. Henry suggests good cause exists because prior counsel repeatedly denied Henry's requests to litigate his *Franks* claim, as well as an ineffective assistance of counsel claim stemming from that denial. In other words, Henry's good cause for not exhausting his *Franks*-based ineffective assistance of counsel claim is that previous counsel refused to pursue it. This is not good cause. Henry was bound by the tactical decisions of his trial and appellate counsel not to pursue his *Franks* claim. *See Jones v. Barnes,* 463 U.S. 745, 754 (1983) (appointed counsel need not raise "every 'colorable' claim suggested by a client"); *see also United States v. Burke*, 257 F.3d 1321, 1323 (11th Cir. 2001) (defendant has authority to make only four fundamental decisions: plead guilty, waive jury trial, testify, and appeal). However, Henry was not bound by the recommendations of his post-conviction counsel. Henry raised fifty-one claims in his post-conviction petition—many aimed at the alleged inadequacies of counsel. (*See e.g.,* 10/2/98 Def.'s Third Am. Mot. to Vacate J.'s of Convictions and Sentence, Claims XVII, XXXV, XXXVIII, XLIII, XLIV.) Yet, Henry did not raise his *Franks*-based ineffective assistance of counsel claim, even though he was aware of the facts supporting it when he filed his post-conviction motion. (*See id.,* Claim XI (alleging police lacked probable cause to arrest Henry and therefore evidence seized from that arrest was impermissibly used at trial).) Henry is bound by his decision to forego that claim and cannot nullify it now by alleging his post-conviction counsel was ineffective for failing to pursue a *Franks* claim. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding there is "no constitutional right to an attorney in state post-

8

conviction proceeding" and therefore "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") Henry also suggests he meets the good cause requirement of *Rhines* because, under Florida law, he can file a belated post-conviction motion under some circumstances. The cases Henry cites for this proposition—*Steel v. Kehoe*, 747 So. 2d 931 (Fla. 1999) and *Medrano v. State*, 748 So. 2d 986 (Fla. 1999)—turned on the fact that counsel in those cases promised to file post-conviction motions, but then missed the deadline to do so. That is not the case here. In any event, even if Henry could bring a late post-conviction motion under Florida law, that does not excuse his failure to raise this claim as part of his original post-conviction motion in 1998. Henry has not established good cause under *Rhines* for failing to bring his ineffective assistance of counsel claim sooner. Therefore, he is not entitled to a stay.

Second, the ineffective assistance of counsel claim is not potentially meritorious as required by *Rhines*. Henry is procedurally barred from raising this claim under Florida law. *See* Fla. R. Crim. P. 3.851(d)(2) (barring post-conviction motions filed more than one year after judgment finalized unless "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence . . . ."); *see also Jimenez*, 481 F.3d at 1342 ("Florida law procedurally bars new claims or claims that have already been raised in prior petitions when 'the circumstances upon which they are based were known or should have been known at the time the prior petition was filed.'" (citing *Johnson v. Singletary*, 647 So. 2d 106, 109 (Fla. 1994)). Henry has been aware of the circumstances underlying this *Franks* claim since his trial, when trial counsel first refused to raise it. More than one year has passed since Henry's judgment was finalized. *See Henry v. State*, 937 So. 2d. 563 (Fla. 2006) (denying Henry all relief). Accordingly, this claim is

9

procedurally barred under Florida law and there is no point in Henry returning to Florida state court to litigate it.  "Dismissing a mixed petition is of little utility, however, when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred."  *Kelly v. Sec'y for the Dep't of Corrs.*, 377 F.3d 1317, 1351 (11th Cir. 2004); *see also Rhines*, 544 U.S. at 277 ("the district court would abuse its discretion if it were to grant [a] stay when [the] unexhausted claims are plainly meritless.").

Additionally, even if the claim were not barred under Florida law, Henry has not demonstrated that trial counsel's refusal to raise the *Franks* claim amounts to ineffective assistance of counsel.  In other words, Henry has not shown his ineffective assistance of counsel claim is potentially meritorious under *Rhines*.  "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  An ineffective assistance of counsel claim is measured against a two-prong test.  "First, the [petitioner] must show that counsel's performance was deficient . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense."  *Id.* at 687.  Hence, as a habeas corpus petitioner, Henry can prevail on this claim only by showing that his attorney's performance was deficient and that the deficiency prejudiced Henry's defense.  "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the [petitioner] must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).  Thus, to establish his ineffective assistance of counsel claim is potentially meritorious under *Rhines*, Henry must prove

10

(1) there is a reasonable probability that the verdict would have been different if his attorney had succeeded in excluding the evidence seized under the search warrant and (2) the *Franks* claim his attorney refused to litigate is meritorious. Henry has not established a reasonable likelihood that the verdict would have been different if the evidence seized under the search warrant had been excluded. Henry has failed to explain how the hair, fingernail scrapings, blood, or clothing fibers obtained during the search relate to his conviction, much less that that evidence underpinned his conviction. Accordingly, Henry's ineffective assistance of counsel claim is not potentially meritorious under *Rhines*.

Finally, Henry's delay in raising his ineffective assistance of counsel claim is the result of his dilatory behavior. Although Henry knew about the facts underlying this claim, he chose not to timely pursue it in an apparent attempt to extend this litigation. This alone justifies a decision to "not grant him a stay at all." *Rhines*, 544 U.S. at 278. For all these reasons, Henry fails to satisfy the requirements of *Rhines* for a stay based on his unexhausted ineffective assistance of counsel claim.

### C. Conspiracy Claim

Henry also seeks to return to state court to exhaust his claim that officers of the trial court engaged in a conspiracy to deprive him of his federal due process rights. Apparently, Henry contends that, in 2007, his previous counsel conspired with the attorney general's office to conceal the fact that his previous counsel did not intend to appeal the trial court's order denying Henry's motion for DNA testing. Even if Henry's allegations were accepted as true, the claim would not create a colorable basis for habeas relief because it does not support the proposition that Henry "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(1). Under a best-case scenario, Henry would only be entitled to

DNA testing, which, as discussed *infra*, does not give rise to a cognizable claim for habeas relief. Accordingly, Henry's conspiracy allegations are not potentially meritorious and therefore do not form an adequate basis for a stay under *Rhines*.

In sum, the Court concludes that Henry has failed to establish the requirements for a stay and abeyance under *Rhines*. Therefore, Henry's Amended Omnibus Motion to Hold in Abeyance (D.E. # 75), *pro se* Supplemental Motion to Hold in Abeyance (D.E. #87), and Motion to Stay (D.E. # 88) are all denied. And because a "district court ***must*** dismiss habeas petitions containing both unexhausted and exhausted claims," the Court will dismiss Petitioner's Amended Petition (D.E. # 81) unless Petitioner withdraws his unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982) (emphasis added). Accordingly, Petitioner is granted until **Wednesday, April 1, 2009** to withdraw his unexhausted claims.

DONE AND ORDERED in Chambers, Miami, Florida, March 19, 2009.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record

Robert L. Henry, #607497
Union Correctional Institution P3204
7819 N.W. 228th Street
Raiford, FL  32026